## Illinois Central Railroad Company

### *v.*

### Ezekiel Phillips.

1. Railroad companies—*care and diligence required of—for the safety of persons not under their care or control.* The law requires of railroad companies, in exercising their franchises, so to use them as not to endanger the security of persons, so far as the employment of human sagacity and foresight can reasonably anticipate and prevent; and to that end, they must provide good and safe machinery, constructed of proper materials and free from defects, so far as known and well recognized tests can determine, and employ skillful and experienced servants in the use of such machinery, and exercise care and vigilance in its examination, to see that it is kept in proper repair and in a safe condition, and when these requirements have been complied with, they can not be held liable for accidents occurring, by which an injury is sustained by a person not under their control or care.

2. Same—*liability of.* While these corporations can not be held liable for injuries that may result from using their franchises, where skill and experience are unable to foresee and avoid them, nor for the acts of persons not in their employment, and over whom they have no control, they will be held responsible for injuries that result from a failure to exercise judgment and skill in the selection of material, construction of their machinery, and in its use upon their roads.

3. Negligence—*explosion of a steam boiler—prima facie evidence of.* In an action against a railroad company, for injuries alleged to have been sustained by the plaintiff, while in the depot of the defendants, from the explosion of the boiler of one of defendants' engines: *Held,* that the mere fact that the boiler exploded, was *prima facie* evidence of negligence, to overcome which, it must be shown, that the materials used in its construction were of the kind usually

employed, and that it had been subjected to, and withstood the usual tests, and was used with judgment and skill, by persons of experience.

Appeal from the Superior Court of Chicago.

The opinion states the case.

Mr. John N. Jewett, for the appellants.

Messrs. Hurd, Booth & Kreamer, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

This was an action on the case, brought in the court below, by appellee, against appellants, to recover damages for injuries alleged to have been sustained by him in consequence of the explosion of the boiler of one of appellants' engines, in the Union Depot at Chicago. The declaration contains two counts, in both of which it is averred, that the explosion was occasioned by reason that the engine and boiler were "old, weak, worn out, insecure, and wholly unfit for use," and that the company did not, by their servants, employ due and proper care in its management and use. In both counts, appellee is stated to have been a bystander, accidentally in the vicinity when the injury occurred.

It appears that the engine was one usually employed in the freight service on the road of the company. In October, 1867, it was withdrawn from that service, in consequence of an injury to its machinery,—but it does not appear that it was to the boiler,—and was placed in the shops of the company, and was repaired. Witnesses testify, that before leaving the shop, on the 19th of October, 1867, it was tested under a pressure of 140 pounds of steam to the square inch, without detecting any defect. It was employed from that time until the day the boiler exploded, in the freight business about the city. On

that day it was put in the place of another engine, and was run to Hyde Park and back. After its return, and while standing on the track in the depot, after the passengers were discharged, and while waiting till the track could become clear, so that it could be backed out, it seems, without any warning, the boiler exploded, rending it in many fragments, some thrown to a considerable distance. It appears that appellee was at the time walking along the platform inside of the depot, and within a few feet of the engine. He was thrown down by the explosion, receiving a bruise on his head, was drenched with dirty water, and was confused by the concussion. It is claimed that symptoms of paralysis have resulted from the injury thus received. The jury rendered a verdict for $7,000 against appellants, on the trial. A motion for a new trial was entered, but was overruled by the court, and judgment rendered on the verdict, and this appeal is prosecuted for its reversal.

The court below was asked, but refused, to give for appellants, their twelfth instruction in the series. It is this:

"If the jury believe, from the evidence, that within a reasonable time before the explosion of the boiler in question, the defendants made a careful and thorough examination of the engine and boiler, by skillful and qualified mechanics in that branch of business, and that the same was then in sound and good condition, and so continued up to the time of explosion, so far as could be discovered; that there was, at the time of the explosion, a proper quantity of water in the boiler, and only an ordinary amount of steam, and that said engine was under the management of a careful and skillful engineer, and that the explosion was from causes which could not have been ascertained by any known and recognized means, then the injury, if any, to the plaintiff, must be borne by him, as one of that class of injuries for which the law affords no redress, and the jury should find for the defendants."

This instruction presents the question of extent of care and diligence the law requires of railroad companies, in exercising their franchises, for the safety of the community at large, not under their care or control as passengers. When their charters were granted, and they accepted them, they assumed the performance of a variety of duties to the public, among which was one undertaking to use their franchises in such a manner as not to endanger the security of persons, so far as the employment of human sagacity and foresight could reasonably anticipate and prevent. They are required to employ experienced, efficient, skillful and prudent agents, servants and artizans. They must provide and use properly constructed machinery, well constructed, by competent and skillful workmen, when manufactured by the company, and from good materials. They must employ competent, skillful, prudent and sober men to use such machinery, and in doing so, they must be careful and vigilant in its examination, to see that it is in proper repair and in a safe condition.

On the other hand, they can not be held to answer for latent defects in materials employed in the construction of their machinery, which the usual and well recognized tests of science and art afford for the purpose but fail to detect. Nor are they liable for accidents occurring by which injury ensues, when skill and experience are not able to foresee and avoid them; nor for the acts of persons not in their employment, and over whom they have no control, or when they have exercised judgment and skill in selecting the material, manufacturing their machinery, and in its use upon their roads, or in selecting machinery manufactured by others.

But when they are employing so dangerous an element as steam for their gain and profit, a proper regard for human life and safety does require that a high degree of care and skill should be employed. From the very nature of its use, large numbers of persons are necessarily exposed to the danger, whether upon their trains or going to or from their depots,

either as passengers, on business with the company, with persons at those places, or are taken there to meet friends, or otherwise. By the exercise of their franchises; they invite large concourses of people to their depots, which, on the arrival and departure of trains, are open and free to the public. And to permit negligence or a want of skill, the use of illy constructed, worn out, or defective machinery, to the danger of persons thus brought together, would be a failure of duty, and a reckless disregard for the safety of community.

While, however, this degree of diligence and care is required, these bodies are not, nor does the law require that they should be, responsible for the safety of persons thus in and about their depots, at all hazards. When they have, so far as the employment of reasonable skill and experience enables them, employed experienced, skillful and prudent servants in the use of their machinery; have selected good and safe machinery, so far as known and well recognized tests can determine, constructed of proper material, free from defects, so far as like tests will disclose, neither reason nor justice requires that they should be held liable for injuries that may result from using their franchises.

It may be that as high a degree of diligence may not be required of them to secure the safety of persons not passengers or having business with the company as for those who are, but, if not, it would be difficult to define the line of separation. It follows, from the rule that we have here announced, that the twelfth of appellants' instructions should have been given. It announces these principles, in a clear, concise and very distinct manner, and by its refusal, the jury were not in possession of all the law governing the case. They may have been, and probably were, misled, in finding their verdict, by its refusal, and in this the court erred.

It is urged, that the court below erred in refusing to give appellants' fifth instruction, which is this:

" The mere fact that the boiler of the engine in question exploded, causing injury to the plaintiff, is not, in this case, and under the relations existing at that time, between the plaintiff and the defendants, as set forth in the declaration, even *prima facie* evidence of negligence, or want of due and proper care on the part of the defendants, either in respect to the condition or management of said engine; and the jury are not authorized to find the existence of such negligence, or want of due and proper care, from the mere fact of such explosion and injury."

Circumstantial evidence depends almost alone upon human observation and experience for its value. It is, in fact, the knowledge of the relation of things and acts to each other, or the knowledge of the motives which prompt acts, and the consequences of acts or causes. When, from observation, we have seen uniform results follow particular acts, we infer that such acts are the cause, and the results are their consequences. Observation teaches, that certain passions, emotions or feelings, usually lead to the performance of particular acts, among all men, and hence, we conclude that, if the passion existed and was excited to a particular degree, a certain act was the result, unless restrained by superior and controling circumstances. So with the natural laws governing inanimate matter. We know it has certain properties, and we also know that these laws are overcome by counter laws or forces. We know that it is a law of matter to cohere and remain united, in various degrees of compactness, depending upon the extent of its cohering power, be that what it may. The particles of iron cohere one with another, in different degrees, depending upon its freedom from impurities, its fineness and other properties. Scientific tests have determined the quality that is best adapted to the several branches of the mechanical arts, and to be employed in the various branches of manufactures. Selections

are made from the different varieties, for various uses, because of their different properties.

Experience in the manufacture and use of iron, for the various useful purposes, has taught that one variety is well suited to one purpose, while another variety is to another. Hence, iron of peculiar qualities has been found best adapted to resist the force of steam. And the skilled and experienced manufacturer selects plates made from iron possessing those qualities, for that reason, when he constructs a steam boiler, if he desires safety and durability. He selects that quality in which there is the greatest tenacity of the particles, and hence, the greatest power of resistance to the force of steam. Some iron possesses this quality in a high degree, while other in a less degree, and some have it greatly improved by the mixture of the ores of different qualities. This being understood by the manufacturer of steam boilers and those engaged in repairing them, they usually select the particular quality suited to the purpose, which is known by the place of its manufacture.

Again, the manufacturer has tests, which are recognized by the scientific world as well as the practical manufacturer, by which to detect latent defects, if they exist, thus securing safety and durability. And every day's experience teaches, that where the proper quality of iron has been selected under the usual tests, with reasonable care by skillful and experienced persons, they are safe in their use for practical purposes. Knowing this, when an explosion has occurred, it is natural to conclude that there has been negligence in selecting, testing, or putting the materials together, when constructed into a boiler, or that it has been negligently used, by subjecting it to too high a degree of pressure by steam. It would, therefore, be improper to say that an explosion is not *prima facie* evidence of negligence. But when it is shown that the iron used in the construction of such a boiler is of the kind usually employed, has been subjected to and stood the usual tests, and has been used by experienced persons with prudence

and skill, this *prima facie* evidence is overcome, and the inference must be drawn that the explosion occurred from some latent defect, not detected by the usual and proper tests. And of all of these questions the jury must be the judges. It then follows, that the court did not err in refusing to give this instruction. But for the error in refusing the twelfth instruction the judgment must be reversed and the cause remanded.

*Judgment reversed.*