## ILLINOIS CENTRAL RAILROAD COMPANY

*v.*

## EZEKIEL B. PHILLIPS.

1. NEGLIGENCE—*explosion of a steam boiler—burden of proof.* It was held, in the case of *The Illinois Central Railroad Company* v. *Phillips*, 49 Ill. 234, in an action against the company for injuries alleged to have been sustained by the plaintiff, while in the depot of the defendants, from the explosion of the boiler of one of defendants' engines, that the mere fact that the boiler exploded, was *prima facie* evidence of negligence, and that the burden of disproving the negligence was thrown upon the company. This rule is adhered to, upon a review of the question, and is applied in a case where the party injured did not hold any relation of trust and confidence towards the company, such as exists between a passenger and the carrier.

2. COMMON CARRIERS—*of their relative duties towards passengers and strangers.* While a higher degree of care and diligence is required of common carriers towards passengers than towards strangers, it is not true that they owe no duty to the latter.

3. In case of passengers, the utmost care and skill are required on the part of the carrier; but in respect to strangers, only such diligence as would be exercised by prudent, skillful and discreet men, having a due regard to the rights and demands of the public, and a proper desire to protect life and property.

4. One not sustaining the relation of trust and confidence which exists between carrier and passenger, can not recover, if, by the exercise of care and prudence, he might have avoided the injury.

Appeal from the Superior Court of Chicago; the Hon. William A. Porter, Judge, presiding.

The opinion of the court contains a sufficient statement of the case.

Mr. John N. Jewett, for the appellants, after setting forth the nature of the case, and showing the relation of the parties to be that of strangers, and not one of trust and confidence, such as exists between common carriers and their passengers, insisted that the following instruction, asked on behalf of the railroad company, and refused by the court below, should have been given:

" The mere fact, that the boiler of the engine in question exploded, causing injury to the plaintiff, is not, in this case, and under the relations existing at the time between the plaintiff and defendants, as set forth in the declaration, even *prima facie* evidence of negligence, or want of due and proper care on the part of the defendants, and the jury are not authorized to find the existence of such negligence, or want of due and proper care, from the mere fact of such explosion and injury."

Counsel contended this instruction embodied the true rule, and asked the court to review their ruling, adverse to this proposition, as announced on the former hearing of this case, reported in 49 Ill. citing *Brand* v. *The Schenectady R. R. Co.* 8 Barb. 368, in which the case of *Stokes* v. *Saltonstall*, 13 Peters,

161, is cited; Angell on Carriers, sec. 569; *Ware* v. *Gay,* 11 Pick. 106; *State, use, etc.* v. *B. & O. R. R. Co.* 24 Md. 84; *Sheldon* v. *The Hudson River R. R. Co.* 14 N. Y. 218; *Burroughs* v. *Housatonic R. R. Co.* 15 Conn. 124; *Batchelder* v. *Heagan,* 6 Shep. (18 Maine) 32; *Clark* v. *Foot,* 8 Johns. 421; *Terry* v. *N. Y. C. R. R. Co.* 22 Barb. 574; *Shaw* v. *Boston & Worcester R. R. Co.* 8 Gray, 45; *Illinois Central R. R. Co.* v. *Ready,* 17 Ill. 580; *Illinois Central R. R. Co.* v. *Phelps,* 29 Ill. 447; *The same* v. *Goodwin,* 30 Ill. 117.

Mr. B. C. COOK, also for the appellants, insisted upon the same view, citing Pierce on American Railroad Law, 314; *Stewart* v. *Hawley,* 22 Barb. 619; *McCully* v. *Clark,* 40 Penn. St. 407; *LeBarron* v. *East Boston Ferry Co.* 11 Allen, 315.

Messrs. HURD, BOOTH & KREAMER, for the appellee, contended the rule laid down by this court was the true rule on that subject, citing *Field* v. *New York Cent. R. R. Co.* 32 New York, 339; *Hull* v. *Sacramento Valley R. R. Co.* 14 Cal. 387; *Ellis* v. *P. & R. R. R. Co.* 2 Iredell, 140; *Herring* v. *W. & R. R. R. Co.* 10 Iredell; *Piggott* v. *Eastern Counties R. R. Co.* 54 Eng. C. L. 233.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

On the eighteenth of December, 1867, appellee was injured by the explosion of a boiler of the railway company, in the Union depot at Chicago. The case was brought to this court in 1868, and reversed and remanded. (49 Ill. 234.) Since then, a second trial resulted in a judgment against appellants for $16,000, and this appeal is prosecuted for its reversal.

The declaration alleges that the engine was old, worn out, insecure, and wholly unfit for use; and that the company did not, by its servants, exercise due and proper care in its use and management.

The proof does not justify the charge of omission of due care, in the management of the engine. In the recital of facts

we are, therefore, confined to the condition of the boiler, at the time of the explosion.

The engine and boiler were between thirteen and fourteen years old, and were thoroughly repaired in 1866. The boiler was originally of Low Moor iron, of a scant five-sixteenths grade. In 1866, the upper portion was good. The lower half was renewed by inserting Juniata iron—one of the best American irons for locomotive boilers. The engine and boiler were originally built by Rogers & Co., leading builders in the United States. According to the opinion of all the witnesses, the boiler, after these repairs, was regarded as good as a new one. Everything was done by the servants of the company to make it safe and secure. The corroded iron was removed. The deterioration of the iron which remained could not be perceived.

In this condition, the engine was put upon the road, and run until in October, 1867, when it was brought into the shop for repairs to the machinery—not the boiler, particularly. After some slight repairs, and a careful and thorough examination, it was pronounced safe by competent mechanics. No indications of weakness; no defects, except a small blister on the crown sheet, could be seen. It was then tested by a pressure of steam of 140 pounds to the square inch.

John De Laf, foreman of machinery at the Illinois Central round house, testified that, in October, 1867, the boiler was tested by steam pressure, previous to putting on the casing; that the rule of the shop was, to test with from 140 to 150 pounds of steam; that he sounded the boiler to discover defects, and found none; that he examined the iron after the explosion to find any indications of burning, or of weakness; that he found none; and the rent seemed to be torn out of the solid iron.

John Gillis, a boiler maker, testified to the testing of the boiler in 1867; that its condition was, in all particulars, good; that he examined the iron after the explosion. It was bright, the grain clear, and not the slightest corrosion around the seam; no indications of burning; the fire box stood intact,

and the crown sheet straight, and if there had been undue heat, arising from deficiency of water, the crown sheet would have expanded, been warped and bent.

The engineer in charge testified, that as he went into the depot, at the time of the explosion, he examined and found there were three solid gauges of water, indicating seven or eight inches over the crown sheet.

George Holton, master mechanic in the Illinois Central shops, testified that he examined thoroughly the boiler in October, 1867, that its condition was then good; saw the engine every day for some time prior to the explosion, and perceived no leaks or defects. After the explosion he examined the iron; it looked like tough iron; showed a good fibre; saw no weakness, and the crown sheet looked as good after the explosion as before.

It is evident from all the testimony that, if the crown sheet is covered with water, there is no danger of an explosion from want of water.

Chalmers, one of the witnesses for appellee, stated that explosions generally take place from low water in the boiler. Burgess, another, said: "I never knew a boiler to explode, unless it was short of water." Another one, Thomas, testified that boilers would explode from other causes than want of water.

The witnesses, however, on both sides, all agree that, in the case of an explosion from want of water, evidences of undue heat would appear in the fragments of iron; the crown sheet would show indications of heat, and would be warped; that the iron would be brittle, and the changes in the grain of a permanent character. The evidence in this case does not show any such indications. It further appears from the evidence of the engineer, uncontradicted, that at the time of the explosion he had only about 100 pounds of steam. The safety valves and the gauge cock, the tests of the steam pressure, were in reliable condition, both before and after the explosion, and there is no proof that the engineer in charge was incompetent.

This court held in this case, in 49 Ill. *supra,* that the mere fact that the boiler exploded was *prima facie* evidence of negligence; and that the burden of disproving the negligence was thrown upon the company. It is further stated, in the opinion of the court, that " where it is shown that the iron used in the construction of such a boiler is of the kind usually employed; has been subjected to and stood the usual tests, and has been used by experienced persons with prudence and skill, this *prima facie* case is overcome, and the inference must be drawn that the explosion occurred from some latent defect, not detected by the usual and proper tests, and of all these questions, the jury must be the judges."

The counsel for appellants question the correctness of this decision, and urge, with unusual earnestness, a review of it. We have again carefully considered the question and the arguments adduced, and adhere to the former opinion, as to the inference from the explosion.

It is assumed, that if the law infers negligence upon proof of an explosion and injury, the appellants are deprived of any defense, except to show that there was no explosion and injury. This is not the effect of the decision. Such a construction makes the explosion, and consequent injury, *conclusive* evidence of negligence, whereas, the decision is, that they are only *prima facie* evidence; that they create merely a disputable presumption, and thus the burden of proof is thrown upon the other party. Such proof does not conclude or forbid further evidence, but only dispenses with it until some proof is given on the other side, to rebut the presumption thus raised.

There is no great hardship imposed upon appellants, in presuming negligence upon proof of the explosion. It may be easily rebutted, if untrue. Such a presumption, however, is prompted by motives of public policy, and is necessary for the promotion of the public safety. We know explosions happen —that they are the exception, not the rule. We know that boilers, manufactured of good material, and carefully managed by skillful and prudent men, carefully tested, thoroughly

repaired when defective, and closely observed to discover indications of weakness, rarely explode. There are mysterious explosions, assignable to no known cause. This is only the exclusion of what is comprehended in the general rule, and should not forbid the inference deducible therefrom. No sane man can doubt, that explosions generally result from defective iron, corrosion or deterioration of the boiler, or its mismanagement. Such facts proved would constitute negligence. Common observation, and the natural operation of the mind, force the conclusion, that this fearful rending of a boiler into an hundred pieces, is generally caused by the omission of some duty.

The law indulges in numerous presumptions—some conclusive, some disputable. Even in cases affecting liberty and life, inferences unfavorable to the accused are drawn from the mere act of homicide, and the possession of stolen property. It is not true, as supposed in the argument, that this court would reverse a judgment of conviction for murder, which rested on no other evidence than the act of killing. The Criminal Code declares, " the killing being proved, the burden of proving circumstances of mitigation, or that justify or excuse the homicide, will devolve on the accused." It is plainly laid down in all works on criminal law, that on a charge of murder, malice is presumed from the fact of killing, unaccompanied with circumstances of extenuation; and the burden of disproving the malice is thrown upon the accused. The doctrine in York's case, 9 Met. 93, is, that where the killing is proved to have been committed by the defendant, and nothing further is shown, the presumption of law is, that it was malicious, and an act of murder. Possession of the fruits of crime, recently after its commission, is *prima facie* evidence of guilty possession.

These presumptions are the result of experience. We know there is a connection between certain things—that one is the effect of the other. Sometimes the connection is so intimate and universal, that the presumption is conclusive. But where

the relation between the cause and effect is general, and not universal, the law infers one fact from proof of another, in the absence of opposing proof.

It was said in the argument, that the law will not be guilty of so glaring an absurdity as to say, that it will assume that to be true until it is disproved, which is as liable to be false as it is to be true. This is not fair argument. It is not a correct deduction from the testimony. The evidence shows that a very large proportion of explosions are the result of over pressure of steam, or defect in workmanship, or defect in material, or some mismanagement. Such is the emphatic testimony of Hayes. He stated that he had examined thirty cases of explosion, and that known causes could be assigned for all of them, except four. The great preponderance of the evidence is, that explosions can generally be traced to known causes. The mysterious explosions constitute the exception. From the general experience and observation of intelligent mechanics, introduced by appellants, we conclude, that the cause of explosions generally, not uniformly, is a want of care, caution, diligence or discretion. Thus a *prima facie* case is made, subject to be disproved.

Counsel for appellants have cited numerous cases, but they do not sustain the position assumed. *Illinois Central R. R. Co.* v. *Reedy*, 17 Ill. 580, was a case to recover damages for killing a steer. The company were not bound to fence their road, to prevent the intrusion of stock. The court decided that animals upon the track, under such circumstances, were trespassers, and that the company were only liable for willful negligence. The train was rightfully on the track; the steer was wrongfully there. Hence, the mere fact of killing was balanced by the previous trespass. To the same effect are the cases of *Illinois Central R. R. Co.* v. *Phelps*, 29 Ill. 447, and *Same* v. *Goodwin*, 30 Ill. 117. The rule in all these cases is, that it is negligence in the owners of animals to permit them to go on a railroad track, where the company were not bound to fence, and that this could only be overcome by proof of gross negligence, or

willful injury. In the case under consideration, appellee was lawfully in the depot, and was guilty of no negligence whatever.

Without referring to all the cases in other States, cited by appellants, we desire to call attention to some authorities which sustain the view taken by us. This court decided, in *Illinois Central R. R. Co.* v. *Mills*, 42 Ill. 408, that the escapement of fire from a railroad locomotive affords a presumption that the company did not employ the best known contrivances to prevent such escapement, and that it devolved upon the company to rebut such presumption. In *Piggott* v. *The Eastern Counties R. R. Co.* 3 Common B. R. 229, one of the judges remarked, " that the fact of the buildings being fired by sparks emitted from defendants' engine, established a *prima facie* case of negligence." In the case of *Ellis* v. *Portsmouth & Roanoke R. R. Co*, 2 Iredell, 138, the court held, " that when the plaintiff shows damage resulting from the defendants' act, which act, with the exercise of proper care, does not ordinarily produce damage, he makes a *prima facie* case of negligence."

In numerous cases, the proof of the accident and injury shows a want of due care, and changes the burden of proof. *Byrne* v. *Boadle*, 2 H. & C. 722 ; *Scott* v. *London Docks Co.* 3 H. & C. 596 ; *Field* v. *New York Cent. R. R. Co.* 32 N. Y. 339 ; *Hull* v. *Sacramento Valley R. R. Co.* 14 Cal. 387.

Railroad corporations employ a powerful and dangerous agency, and public policy and safety require that they should be held to a high degree of care and diligence. Even their liability for injuries to passengers does not depend solely upon contract, but is founded on the great principle of social duty, that every man should so conduct his own affairs as not to injure his neighbor. They are bound to use safe and good machinery, and they ought to know its strength and character. It is a reasonable presumption, that it is defective, or mismanaged, when it is torn into fragments, endangering hundreds of lives.

It is also contended, that a distinction exists between the relative duties of a common carrier, to passengers and to strangers, and that appellants owed no duty to the party injured, in this case. There is no doubt, a higher degree of care and diligence is required towards the former than the latter. In the former case, the utmost care and skill are required; in the other, only such diligence as would be exercised by prudent, skillful and discreet men, having a due regard to the rights and demands of the public, and a proper desire to protect life and property. One not sustaining the relation of trust and confidence which exists between carrier and passenger, can not recover, if, by the exercise of care and prudence, he might have avoided the injury. *Galena & Chicago Union R. R. Co.* v. *Yarwood,* 17 Ill. 519; *State* v. *Balt. & Ohio R. R. Co.* 24 Md. 84.

Though appellee was no passenger, yet he was guilty of no negligence. He was in the depot to purchase a ticket on another road, which had its office there. He had a lawful right to be there. He did not heedlessly rush into danger, but used all the prudence incumbent upon him. For the assumed negligence of the company, and the consequent injury, he is entitled to recover, until the negligence is disproved. Otherwise, the company might injure and destroy, at pleasure, all who were not passengers.

It would extend this opinion to an unreasonable length, if we were to undertake a discussion of all the instructions given and refused, and of all the questions presented in the argument.

Whether negligence is a question of fact, or a mixed question of law and fact, or a conclusion of law from facts proved, it is not necessary to discuss. It is not involved in the case. It is sufficient that we have authority to revise the action of the jury, upon the facts presented, for the promotion of justice, and the protection of the rights of the parties.

The facts in relation to the boiler in question are undisputed. The engineer was skillful and prudent. No omission

of duty was proved. There was a sufficiency of water, and no over-pressure of steam. The boiler was originally of the best iron, and constructed by competent builders. It had recently, prior to the explosion, been thoroughly repaired, with the best material, and the usual tests were applied, to discover any defects or weakness.

We, therefore, think that the *prima facie* case has been completely disproved.

The judgment is reversed and the cause remanded.

*Judgment reversed.*