# Edmund Stephen, Administrator, v. Joseph J. Duffy et al.

## Gen. No. 4,793.

1. MASTER AND SERVANT—*duty of former when using dangerous
agency, such as dynamite.*  Where the use of dynamite and the
dangers arising from its use are in nowise incident to the servant's
employment, he is entitled from his master to as much protection
as the master is bound, in law, to accord to a stranger. ·

2. NEGLIGENCE—*what raises presumption of.*  Proof of an injury
resulting from the use by the defendant of dynamite, in connection
with evidence that the injury to the plaintiff resulted without his
fault and could not reasonably have been avoided by him, raises a
presumption of negligence and establishes a *prima facie* case in
favor of the plaintiff.

Action in case for death caused by alleged wrongful act.  Appeal
from the Circuit Court of Will County; the Hon. F. L. HOOPER,
Judge, presiding.  Heard in this court at the April term, 1907.
Reversed and remanded.  Opinion filed August 6, 1907.  Rehearing
denied and opinion modified October 15, 1907.

JOHN W. D'ARCY, for plaintiff in error.

J. L. O'DONNELL, T. F. DONOVAN and R. J. FOLONIE, for defendants in error; MORRISON & BROWN, of counsel.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This suit was brought by plaintiff in error to recover damages for the benefit of the next of kin because of the death of Alfred Oestry, alleged to have been caused on December 26, 1904, by the negligence of defendants in error. The defendants in error were engaged in excavating and removing limestone rock from the drainage channel of the Sanitary District of Chicago, in the township of Lockport in Will county. The ledge of rock was being removed a depth of twelve feet.

The method of removal was to cut the outer edge of the trench with machines known as channelers, then drill four rows of holes about six feet apart, the first row being six feet back from the face of the rock, to a depth of sixteen feet. The holes were one and one-half inches in diameter, but were enlarged at the bottom by springing them with light charges of dynamite. Each hole was then charged with from twenty-five to forty pounds of dynamite, the dynamite being in sticks weighing about half a pound each. An exploder, which is a small copper cap containing some kind of explosive that can be discharged with electricity, is attached to the last stick of dynamite inserted in each hole amongst the other sticks of dynamite. Electric wires connecting with this exploder are run through and around the stick of dynamite that the exploder is attached to so that the exploder and dynamite may not become separated. The exploder is covered with a substance resembling sulphur to keep it dry. A general wire connects a series of small circuits with a battery, separate circuits being made of every four holes. The rows of holes are all discharged at the same time, the discharge breaking up the rock and heaving it above its natural level. The rock after being broken up by the dynamite

was loaded by means of a steam shovel into cars. The deceased at the time he was killed was in the employ of the defendants in error operating the crane on the steam shovel. The men engaged on the shovel had nothing to do with the men who drilled the holes and charged and exploded the dynamite. The holes had been drilled, charged and exploded, at the place where the deceased was killed, four days before the day of the accident, while the steam shovel was working half a mile distant. At the time of the accident the deceased and other employees in charge of the shovel were working it in the stone and had loaded several cars, when the shovel came in contact with a piece of unexploded dynamite, causing an explosion which caused the death of Alfred Oestry, who was struck by a flying rock.

The declaration contains seven counts. The third count alleges amongst other things, that it was the duty of defendants to furnish and provide said Alfred Oestry with a reasonably safe place in which to perform his work for the defendant while in the exercise of reasonable care without being subjected to personal injury or loss of life in rendering such service for the defendants; yet the defendants, disregarding their duty, carelessly and negligently furnished and provided said Alfred Oestry, while said Oestry was in the exercise of reasonable care, with a dangerous and unsafe place to work with the steam shovel aforesaid in the above described channel by reason of its containing, to-wit, forty pounds of concealed unexploded dynamite beneath the surface of the stone in a bank or ledge from which said Alfred Oestry was then and there in the exercise of reasonable care loading stone with a steam shovel, of which the defendants in the exercise of reasonable care and diligence could have ascertained and had notice and which was unknown by Alfred Oestry, and of which he received no notice or warning. The second count alleges that the defendants wrongfully failed and neglected to inspect said premises containing dynamite after the attempted blasting thereof; and to remove said unexploded dynamite, and wrongfully allowed said unexploded dynamite to remain in said drainage channel with-

out notice or warning to said Oestry. The remaining counts allege specific negligence in reference to the manner of charging the holes, insufficient exploder, frozen dynamite and other matters, the allegations concerning which it was essential the plaintiff should prove, or should introduce evidence tending to prove, to sustain such counts.

At the close of plaintiff's evidence the court, on motion of the defendants, instructed a verdict for the defendants, and rendered judgment against plaintiff for costs. The principal question presented to this court is, does the record contain evidence which standing alone fairly tends to prove all the material averments in any count of the declaration? If it does then the cause should have been submitted to the jury.

The evidence showed that the deceased was working as cranesman on a steam shovel engaged in loading broken rock into cars; that the cranesman was stationed on a stand on an engine midway of the boom; that the cranesman's duty was to direct the course of the shovel in the stone pile, and after it was filled with rock to guide it to its proper position over the car and dump it; that the boom is thirty feet long and stands at an angle of forty-five degrees, so that the cranesman was elevated above the level from which the rock was taken by the shovel; that when the fourth car was being loaded on the morning of the accident an explosion occurred in the pile of rock at the place where the shovel was being forced into the pile; that this explosion was like explosions in work where dynamite is being used for blasting, and threw stone all around, one piece striking plaintiff in error's intestate, causing his death; that the explosion broke the shovel so that it could not be used that day, and flying rock from it took the corner off a top buggy that was being driven over the bridge one hundred feet or more distant, and a rock weighing twenty pounds fell in front of the horse; that the rock had been blasted by the employees of defendants in error with dynamite four days before the injury; that the blasting was done by exploding dynamite in a large number of holes at the same time; that no work had been done at

the place where the explosion occurred between the time of firing the dynamite and the morning of the accident; that a steam shovel loading stone from a bank in which there was dynamite would cause the dynamite to be exploded by forcing stones against it; that if the charges in any of the holes failed to explode it was possible for men skilled in blasting to detect that fact; that the charge of dynamite in any of the holes or small circuits might fail to discharge because of any one of a number of reasons, either if the fulmanite in the exploder should get wet or be defective, or if the electric current should be broken by the wire becoming detached from the exploder, or if the wires should get crossed so as to make a short circuit and the other charges still be exploded.

It is a matter of common knowledge that the use of dynamite as an explosive is intrinsically dangerous. "It is the duty of the master to provide for his employee, so far as the work at which he is engaged will permit, a reasonably safe place to work, and if the place may become dangerous by reason of perils arising from the doing of other work pertaining to the master's business different from that in which the particular servant is engaged, to give him such warning of the additional danger as will enable him in the exercise of reasonable care, to avoid them or to guard himself against them. Whatever means may be employed, it is the duty of the master to employ them." Felice v. N. Y. C. & H. R. R. Co., 14 App. Div. (N. Y.), 345. The more dangerous the means are that are employed by a master to accomplish the work he is engaged in, the greater care and diligence is required to fulfill the duty of ordinary care that is required of the master to furnish the employee a safe place. The care of the master must be proportionate to the dangerous means employed by him, in order to constitute reasonable care. The deceased was in no way connected with the employees who did the drilling, the charging the holes with dynamite or the firing of the charges. The dangers to which the deceased was exposed by virtue of his employment were only the dangers of working with the machinery connected with the steam shovel. The death of the deceased was occasioned by

the explosion of dynamite that was in the pile of rock. This danger was in no way incident to his employment. The deceased was entitled to the same protection against injury from dynamite that a person not an employee was entitled to. In I. C. R. R. Co. v. Phillips, 55 Ill., 194, where a stranger was injured by the explosion of a boiler, it was held that "the mere fact that a boiler exploded was *prima facie* evidence of negligence, and that the burden of disproving the negligence was thrown on the company." This rule was approved in Schaller v. Independent Brewing Co., 225 Ill., 492, where it was said, "It does not appear from the judgment and record of the Appellate Court that said court held proof of the explosion was not *prima facie* evidence of negligence as contended by appellant. Such proof in any event, is not conclusive but is only *prima facie* evidence of negligence and may be rebutted by other testimony." In John Morris Co. v. Burgess, 44 Ill. App., 39, it was held that when a bystander is injured, the explosion of a boiler is *prima facie* evidence of negligence. In P., C., C. & St. L. R. R. Co. v. Campbell, 116 Ill. App., 356, it was held that from an injury resulting to plaintiff, an employee riding on a work train into the rear of which another train ran, the doctrine of *res ipsa loquitur* applied, and negligence upon the part of the defendant in such instance will be presumed. It is urged in behalf of defendants in error that it was incumbent on plaintiff in error to prove the particular act that was the cause of the dynamite not having exploded when the rock was blasted. In Armour v. Golkowska, 202 Ill., 144, where plaintiff was injured by a barrel falling from an unprotected platform, it was held not indispensable to her right of recovery that she show the cause of the fall of the barrel or that it was not caused by the force of nature or by some person unconnected with the defendant. In this character of cases there is a principle involved that distinguishes them from cases where an employee is injured by the agency or machinery with which he is working; in the latter case the employee has within his knowledge the means of proving the cause of his injury, while in the former the employee

37.

ordinarily is in entire ignorance of the cause of the accident and the means of proof are entirely within the power of the master.    To apply the rule contended for by defendants in error, and say that one injured as plaintiff in error's intestate was cannot recover, unless he affirmatively proves in the first instance the specific act of negligence of the defendants which caused the injury, would in many cases be a denial of a right to recover at all, no matter how negligent defendants might be.    There was evidence that when the blasting of the rock was done in which the machine was working at the time of the injury, the dynamite did not seem to explode with its usual force and in places the rock was heaved up and in others it was level.    There was also evidence offered tending to prove that by a proper inspection, by competent and skilled men, the fact could have been discovered that some of the charges had failed to explode.    In such case, it was the defendants' duty to inspect and know if any of the holes loaded with dynamite remained unexploded, and if so, to remove the unexploded dynamite to prevent injury to the steam shovel crew.    Harp v. Cumberland T. & S. Co., 80 S. W. R., 511; Lanza v. Le Grand Quarry Co., 124 Ia., 659; Riley v. Erie Ry. Co., 177 N. Y., 547.    There was also evidence that there were sticks of dynamite picked up in the rock pile by workmen within ten feet of the place where the explosion occurred, the day after the accident.    There was in the opinion of this court sufficient evidence to justify the case going to the jury under the second and third counts of the declaration.    We think this case is one in which, when the peculiarly dangerous agency used by the defendant in error is considered and with which the deceased had no connection in handling or working, the facts that he was killed by an explosion of dynamite and that another gang of employees of defendant had blasted the rock in which the deceased was killed with dynamite, but four days previous to the explosion, considered with the other evidence offered on the part of plaintiff in error, are sufficient to raise a presumption of negligence which may prevail unless rebutted by proof showing that ordinary and rea-

sonable care was taken to avoid such accidents. The defendants in error have peculiarly within their power the means of producing evidence of reasonable care in the premises. The peremptory instruction for the defendants in error should not have been given, and the judgment is reversed and the cause remanded.

*Reversed and remanded.*