Argued June 22, affirmed July 7, 1914.

## MORANDAS v. L. R. WATTIS CO.*

(142 Pac. 537.)

**Master and Servant—Injuries to Servant—Appliances for Work.**

1. Independent of any statute, it is the duty of the master to supply a reasonably safe place in which and reasonably safe appliances with which the servant is required to work.

**Master and Servant—Injuries to Servant—Appliances and Place to Work—Delegation of Duty.**

2. The master cannot avoid nor delegate to another his duty to furnish a safe place to work and safe appliances, so as to escape his responsibility.

[As to duty of employer to furnish safe place and appliances, see notes in 97 Am. St. Rep. 884; 98 Am. St. Rep. 289.]

**Master and Servant—Injuries to Servant—Actions—Motion for Nonsuit.**

3. In an action for the death of a servant directly caused by the breaking of a chain, permitting a heavy machine to roll over and crush the servant, where there was testimony tending to show that the

---

*On the question of the delegability of the master's duty as to places and appliances, see note in 54 L. R. A. 63.    REPORTER.

chain was an appliance furnished by defendant for use in the operation of the machine, that it was worn and defective, as defendant knew or with reasonable diligence might have known, but the servant did not know, a motion for nonsuit was properly denied.

From Lane: JOHN S. COKE, Judge.

In Banc.    Statement by MR. JUSTICE BURNETT.

This is an action by John Morandas, administrator of the estate of John Thalasinos, deceased, against L. R. Wattis Company, a corporation, and Utah Construction Company, a corporation, to recover damages for the death of plaintiff's decedent, alleged to have happened before the passage of the employers' liability law, on account of the negligence of the Utah Construction Company and the L. R. Wattis Company, for the latter of whom he was at work.

The three defenses of assumed risk, contributory negligence, and negligence of fellow-servants were interposed and were traversed by the reply.

A nonsuit was ordered in favor of the Utah Construction Company.  A verdict in favor of the plaintiff and against the L. R. Wattis Company was followed by a judgment, from which the latter defendant appeals.                                   AFFIRMED.

For appellant there was a brief over the names of *Messrs. Woodcock, Smith & Bryson* and *Mr. O. H. Foster,* with oral arguments by *Mr. Richard S. Smith* and *Mr. Foster.*

For respondent John Morandas there was a brief over the names of *Mr. Hayward H. Riddell, Mr. H. Daniel* and *Messrs. Thompson & Hardy,* with oral arguments by *Mr. Riddell* and *Mr. Charles A. Hardy.*

For respondent Utah Construction Company there was a brief with oral arguments by *Messrs. Williams & Bean.*

Mr. Justice Burnett delivered the opinion of the court.

The pleadings and the evidence on behalf of the plaintiff disclose substantially a case as follows: The defendant L. R. Wattis Company was a subcontractor under the Utah Construction Company for the grading of a railroad bed in Lane County. For use in the enterprise, it had transported by railway, to a point near which it was to be employed, a steam shovel weighing upward of 30 tons, together with the appliances convenient for its operation. The various parts of the machine having been unloaded from the cars, it was assembled and moved a short distance on a temporary track up what is said to be about a 12 per cent grade. In this process the shovel, with its engine and machinery was mounted on a short flat car having two sets of trucks, one at the forward end and the other at the rear of the platform. Owing to the steepness of the grade, the machine could not be moved wholly by its own power up the incline. Having proceeded to the foot of the hill, it became necessary to fasten a snatch block to stumps along the line through which a cable was rove and carried back to the windlass on the car. The machinery was then started and wound up the cable, with the result that the whole outfit was moved gradually up the hill. In so doing it was requisite to chock the wheels of the car trucks with a heavy railroad tie to prevent the machine from rolling back down the hill when the engine was stopped. The workmen accompanying the concern consisted of three Americans and six Greeks, among the last of whom the decedent was one. After the machine had been moved part way up the incline, the men in charge decided to extend the cable to a new hold. The stump

selected was too far away to be reached by the chain then in use for that purpose. The decedent was directed by the engineer to go back to the place where the machine had been assembled and fetch a chain left there, which had been in use about the shovel, as some witnesses say, about four years. This chain was brought up and used to lengthen the connection between the snatch block and the stump. The decedent was then ordered to take his place at the rear of the outfit for the purpose of chocking up with the tie, with the assistance of another Greek laborer. To do this he had to get down upon his hands and knees under the coal bunker, which overhung the rear part of the car. All being in readiness, the order was given to start the machinery, and, on the first strain upon the cable, the chain which the decedent had brought up parted, and the car, with its load rolled, back down the decline upon the decedent, and immediately crushed him to death. The chain hitherto in use had not broken, and the defendant contends that all who were engaged in the work of moving the shovel were fellow-servants; that the fault, if any, was that of the decedent's co-workers, and was a mere negligence of operation not chargeable to the master. Upon this contention the defendant, appealing, stakes its whole case.

1. It is well settled by the precedents already established by this court that, independent of any statute, it is the duty of the master to supply a reasonably safe place in which, and reasonably safe appliances with which, the servant is required to work: *Kopacin* v. *Crown-Columbia P. & P. Co.*, 62 Or. 291 (125 Pac. 281); *Kovachoff* v. *St. Johns Lbr. Co.*, 61 Or. 174 (121 Pac. 801); *Dunn* v. *Orchard L. & T. Co.*, 68 Or. 97 (136 Pac. 872); *Woods* v. *Wikstrom*, 67 Or. 581 (135 Pac.

192); *Field* v. *Northwest Steel Co.,* 67 Or. 126 (135 Pac. 320).

2. This is a duty which the master cannot avoid nor delegate to another in any way so as to escape his responsibility.

3. The question here is one of fact whether the chain in question was an appliance supplied by the master to use in the operation of the shovel; a part of that work being the movement of the machine from place to place. The decision upon which the defendant principally relies is that of *Subbo* v. *Pacific Coast Construction Co.,* 65 Or. 405 (123 Pac. 1070, 133 Pac. 83). In that case the workmen were engaged in blasting stone. The defendant had furnished for use in tamping the explosive into holes drilled in the rock, wooden rods suitable for the purpose, because, being lighter, they made less concussion, and consequently were not so liable to set off the explosive. The plaintiff was at work cleaning off the surface of the ground at some distance from the hole in which the explosion occurred. The foreman in charge of the work, instead of using the wooden rods supplied for the purpose, employed an iron bar, which by reason of its greater weight, made sufficient concussion to cause an explosion, which injured the plaintiff. It was there held that the master, having furnished suitable appliances with which to accomplish the work, had performed his whole duty, and that the negligence of the foreman in taking the iron bar was negligence of a fellow-servant, for which the master was not responsible to the plaintiff. That case is distinguishable from the one at bar. Conceding, as we must, for the purpose of a motion for nonsuit on which error is predicated, that the chain which broke was an appliance furnished by the master with which to operate

the shovel, its breaking was the immediate cause of the accident.   The operation of it by the fellow-servants was conducted in the same way as if the chain had been a perfect one, strong enough for the purpose. The manner in which it was used, so far as the record discloses, was the usual one in which the work was conducted, and there was no negligence of operation.   The immediate cause of the disaster was the breaking of the chain, due, as the testimony tends to show on the part of the plaintiff, to a defective link, together with the general worn condition and consequent weakness of the chain.   This serves to distinguish the case in hand from the Subbo case, and likewise from the other citations in the defendant's brief.   In all those cases the master had furnished ample material in good, sound condition for use in the work, but the fellow-servants preferably used an inferior and worn-out article.   There is no showing of that kind in the case at bar.   For all that appears in the testimony, there was nothing else to be used for the purpose of hitching the snatch block, except the chain which was used when the first chain proved to be too short to reach the stump.   It is proper to state that there was testimony for the defendants materially contradicting the evidence on behalf of the plaintiff, and which tended strongly to prove the contention that the decedent was guilty of contributory negligence, causing his death, but these are questions of fact for the jury, which we cannot consider on this appeal.

We hold, therefore, that there was testimony which the jury was entitled to consider as showing that the chain in question was an appliance furnished by the defendant for use in the operation of the shovel; that it was worn and defective; that the defendant knew, or with reasonable diligence might have known, of

the defect; and that the plaintiff did not know of its insufficiency. The case was properly submitted to the jury as against the defendant's motion for a nonsuit. Other errors were predicated upon the instructions of the court to the jury, but they were not presented at the argument nor in the brief, and an examination of them convinces us that they are groundless.

The judgment is affirmed.   Affirmed.

Mr. Justice Eakin did not sit.