Argued September 29, reargued November 10, reversed and
remanded November 17, petition for rehearing denied
December 15, 1954

# CELORIE *v.* ROBERTS BROS., INC.

276 P2d 416

*Thomas H. Tongue, III,* argued the cause for apellant. On the brief were Hicks, Davis & Tongue, and Alton John Bassett, of Portland.

*Bruce Spaulding* argued the cause for respondent and cross-appellant. On the brief were Wilbur, Mautz, Souther & Spaulding, of Portland.

TOOZE, J.

This is an action by plaintiff Rose Celorie against Roberts Bros., Inc., a corporation, as defendant, to recover damages for personal injuries alleged to have been caused by defendant's negligence. The jury returned a verdict in plaintiff's favor in the sum of $15,000, and judgment was entered accordingly. Defendant then moved the court for judgment in its favor notwithstanding the verdict, or, in the alternative, for a new trial. The trial court granted the motion for judgment notwithstanding the verdict; it denied the motion for a new trial. Plaintiff appeals from the judgment in defendant's favor; defendant cross-appeals from the order denying the motion for a new trial.

Defendant owns and operates a large department store in the city of Portland. As a part of its business, it maintains a "will call" or checking counter for the use and benefit of its customers in checking and storing articles of merchandise. Plaintiff was an employe of the defendant, assigned to work in the "will call" department.

By her complaint, plaintiff charged defendant with negligence in failing to provide her a safe place to work in certain particulars as alleged. She averred that in performing her work for defendant, it was her duty to render miscellaneous services such as wrapping bundles, delivering packages to the customers of defendant, checking and receiving packages from such customers, and that such duty required her to lift sundry heavy bundles and packages. She alleged: "In order for plaintiff to perform her said duties she was required to work in cramped and crowded quarters which were cluttered with numerous packages, boxes

and other miscellaneous items left by defendant's customers." She further alleged as follows:

## "III.

"On said 26th day of July, 1949, while plaintiff was so engaged on behalf of defendant, she was required to lift a large, awkward and heavy bag placed on said counter by one of defendant's customers, when by reason of said confined and crowded quarters, as plaintiff bent over to lower said bag to the floor, one of the miscellaneous items near plaintiff's feet fell against her so that she was caused to lose her balance, wrenching her body and her back, which injuries are hereinafter more specifically set forth."

The specific acts of negligence charged against defendant and submitted to the jury are: (1) in (ordering and) requiring plaintiff to lift heavy boxes and packages, considering the cramped quarters and other conditions then and there existing; (2) in failing and neglecting to provide a (chute or) passageway under said counter for customers to use in checking said packages, so as to eliminate the necessity of plaintiff having to handle said heavy and bulky packages; and (3) in failing and neglecting to provide a storage room or other adequate space in which to store properly and pile said bundles and packages checked by defendant's customers. (Note: The words "ordering and" and "chute or" shown in parentheses above were taken from the jury by the court in its instructions.)

Defendant by its answer denied negligence on its part and affirmatively pleaded as defenses to plaintiff's cause of action: (1) assumption of risk, and (2) contributory negligence. In her reply plaintiff denied the affirmative allegations of the answer.

In allowing the motion for judgment in favor of

defendant notwithstanding the verdict, the trial court based its actions upon two grounds: (1) that the injury to plaintiff was not caused by any negligence on the part of defendant; and (2) that plaintiff assumed such risks of her employment as were included in the cause of her injury.

■■ In determining whether the trial court erred in entering judgment in defendant's favor, we are required to examine the entire record, and from that review ascertain whether there is any substantial evidence to support the jury's verdict. In deciding that question, we must view the evidence in the light most favorable to plaintiff, and give to her the benefit of every reasonable inference that can be drawn therefrom in her favor. *Burrows v. Nash,* 199 Or 114, 122, 259 P2d 107; *Glascock v. Anderson,* 198 Or 499, 503, 257 P2d 617; *Willoughby v. Driscoll,* 168 Or 187, 120 P2d 768, 121 P2d 917.

Plaintiff was one of three or four persons working in the "will call" department, whose duties included receiving packages brought to the counter by customers to be checked, getting packages which had been previously purchased by customers on a "will call" basis, wrapping gifts, writing receipts, making up money orders, selling stamps, receiving cash, and also some bookkeeping work.

In performing their services, plaintiff and her co-employes were required to work "at quite a pace", particularly on busy days. There is substantial evidence in the record to the effect that on the day of the alleged accident, the employes at the "will call" counter, including plaintiff, were very busy in handling the business of that department.

In front of the "will call" department there was a counter four feet high and sixteen feet long, with a

passageway at both ends. Behind the counter there was a narrow aisle about three feet in width. Back of this aisle, there were a long table and two desks, which were moved together. There was no open space in front under the top of the counter, nor were there any cubbyholes or shelves in back of the counter for the storage of packages brought in by customers to be checked. The only available space for storing checked packages received over the counter was on the floor under the counter, under and on the table back of the counter, and on the floor in the three-foot aisle between the counter and the table.

All types and sizes of packages were handled at the "will call" department, including bookcases, chairs, carpet sweepers and lamps. When large packages were brought to the counter for checking, they were not taken over the counter, but were tagged and placed on the floor in front. Other packages were placed by the customer on the top of the counter, and, after checking, were removed therefrom by the employe and stored in such space as might be available behind or under the counter. Frequently shopping bags filled with heavy canned goods, or other heavy articles, were brought to and placed on top of the counter by customers, to be checked and stored. Plaintiff testified that she and her coemployes "had to take everything over the counter". Defendant's superintendent in charge of the "will call" department testified: "* * * if the customer put the package on the counter, we would remove it to the back. If it was a large package, we would check it out in the front of the counter, across the aisle from the counter."

When packages were received at the counter, plaintiff and her coemployes were required to determine for themselves where to place them, i.e., whether to

pile them under the counter, place them on the table or in the aisle (when there was no other available space) behind the counter. At times, and particularly on busy days, it was a common practice to pile up checked packages under the counter and on the floor in the narrow aisle to the point where "* * * the packages were all over the floor, around. There just wasn't any place to work, and on a very busy day we just didn't know what we were going to do, trying to get around, get packages, just going in circles, because there wasn't adequate space in which to handle all the packaged goods that came up there."

A few days prior to the accident in question here, plaintiff and her coemployes complained to the superintendent in charge of their department about the crowded conditions, congestion and confusion, as described above, and asked for more room and a proper place to work. The superintendent told the girls not to worry and promised to correct the conditions complained of, and plaintiff "took him at his word", continuing in her employment. As to these complaints, Isabelle Long, one of plaintiff's coemployes and a witness for her, testified on direct examination:

"Q * * * Did you have occasion before Mrs. Celorie was hurt to complain to anybody about that [congestion, etc.]?

"A Yes.

"Q Well, tell the jury about that.

"A We had complained about the congestion, the confusion there. We had asked if there wasn't some way that we could have more room or a proper place to work."

Plaintiff also testified about the complaints made to the superintendent a few days prior to the time she

suffered injury. She described the promise of the superintendent as follows:

"A Well, he told us not to worry, that the conditions would be remedied, that we would either have a new department or better working conditions, more space."

On the day of the accident, checked parcels were piled under the counter and protruded about a foot into the aisle. Plaintiff was five feet two inches in height, and the counter was four feet high, as above noted. Also, as stated, it was a busy day.

On that day at approximately 10:30 a.m. a customer placed a double-sized shopping bag on the counter to be checked by plaintiff. At the time there were several other customers waiting in line to be served at the counter. The shopping bag had handles on top and was fourteen inches wide and about two feet high. Thus, when the height of the shopping bag was added to the height of the four-foot counter, there was a total height of approximately six feet. Due to the presence of the packages under the counter and on the floor out from the counter "about a foot", plaintiff could not get close to the counter and had to lean forward and reach up in grasping the handles of the shopping bag.

What then happened is best described in plaintiff's own words:

"A * * * I had to lean over the counter, because we had packages underneath the counter, and I couldn't get close to the counter, so I naturally had to stand a little ways back, and I took this package, and, as I took it from the counter, it was so heavy it sort of threw me off balance, and I tried to get a footing so that I wouldn't fall, and in doing so these packages fell against me, and caused my back to twist, and I felt that snap in my back.

"* * * * *

"A Well, I tried to get my footing in there, and I couldn't put my foot in there too far because the packages were in the way, and they fell down against me, which caused me to twist my back, trying to hold myself up.

"* * * * *

"A I says, 'Oh, my back!' And then I walks over, and told one of the girls, I said, 'Gee, that bag must have had bricks in it, it was so heavy.'"

On cross-examination, plaintiff further testified:

"A The lady had this big, heavy shopping bag, and I gave her a check and started taking the package, and it was so heavy it started throwing me off balance, so I tried to get a footing under here where there were packages, and in doing so they fell against me, and I twisted my back.

"Q What fell against you?

"A Those packages under there. One was an umbrella, and you know how they protrude."

As a result of the accident, plaintiff suffered a severe injury to her back, necessitating prolonged and painful treatment, including body casts and a spinal fusion operation. The injury to her back is permanent.

■ We do not mention contradictory evidence introduced by the defendant. It was exclusively the province of the jury to weigh the evidence and decide where lay the truth.

■ The gravamen of plaintiff's complaint was that defendant was negligent in failing to provide her with a reasonably safe place in which to work. That was the issue submitted to the jury by the trial court.

We are of the opinion that the evidence introduced on the trial, together with the reasonable inferences to be drawn therefrom in favor of the plaintiff, made it a jury question whether defendant was negligent in

failing to provide plaintiff with a reasonably safe place in which to work. The evidence is substantial. The lack of proper storage facilities, the failure to provide an opening under the counter through which heavy parcels such as the one involved in this litigation could be passed, the cramped quarters, the confusion existing, and the pace at which plaintiff was required to work, all combined and contributed to render the place an unsafe place within which to work, or, at least, the jury could and did so find under all the facts and circumstances of this case.

It is hornbook law that an employer has a duty to provide employes with a safe working place and that this duty cannot be avoided or delegated. *Pond v. Jantzen Knitting Mills*, 183 Or 255, 258, 190 P2d 141; *Morandas v. L. R. Wattis Co.*, 71 Or 367, 370, 142 P 537.

Whether an employer has discharged his duty in this respect is usually a question for determination by the jury; particularly, whenever the evidence is susceptible to a reasonable inference tending to establish plaintiff's right of recovery. *Hicks v. Peninsula Lumber Co.*, 109 Or 305, 317, 220 P 133.

The effect of the trial court's action in allowing defendant's motion for judgment in its favor was to determine, as a matter of law, that there was no substantial evidence of negligence on the part of the defendant, or, if there was, that such negligence was not a proximate cause of the accident resulting in plaintiff's injuries.

This court has stated and restated many times that the question of proximate cause is one for jury determination unless the facts of the case are such that the court can say affirmatively that all reasonable minds must reach the same conclusions therefrom. It is unnecessary to cite our many decisions to that effect.

It is a rare case, indeed, where proximate cause is decided as a matter of law. We are firmly convinced that under the facts and circumstances of this case, the questions of negligence as well as proximate cause were properly submitted to the jury as questions of fact, and that the trial court erred in determining them as matters of law.

■■ The trial court was also of the opinion that the plaintiff had assumed the risks of her employment which contributed to cause her injuries. We have looked with disfavor upon the defense of assumption of risk, particularly where the risk is created by the employer's negligence. In an opinion by Chief Justice McBRIDE, in the case of *Shields v. W. R. Grace & Co.,* 91 Or 187, 201, 179 P 265, the rules as to assumption of risk as a defense in common-law actions brought by servants against their masters are set forth in detail. One of the rules announced by the court is:

> "The mere fact that the servant observed the physical conditions existing at the time of his employment, does not of itself imply an assumption of the risks of such conditions unless they were so obvious as to impress *their danger* upon the mind of a person of ordinary care and prudence. An employee must not only be aware of the conditions *but must understand and appreciate the risk.*" (Italics ours.)

In *Makino v. Spokane, Portland & Seattle Ry. Co.,* 155 Or 317, 324, 63 P2d 1082, we discussed in detail the history of the doctrine of assumption of risk and the later modifications thereof. We said:

> "The fact that today's economic and industrial conditions do not always permit the employee to 'decline any service in which he reasonably apprehends injury to himself' has caused an occasional court to speak of the defense assumption of risk as

a disfavored defense, although the courts recognize that it is available in all cases fairly within the rule.''

■ The evidence in this case is conclusive that plaintiff observed the physical conditions existing at her place of employment, but that doe not mean that such conditions would impress her with their danger, nor that she understood and appreciated the risk of danger from working under such conditions. Whether she did understand and appreciate such risks and assumed them was for the jury to determine as a question of fact; not for the court to determine as a matter of law. *Bevin v. O.-W. R. & N. Co.*, 136 Or 18, 33, 298 P 204; *Millen v. Pacific Bridge Co.*, 51 Or 538, 549, 95 P 196.

■ Moreover, the evidence is almost conclusive that plaintiff complained to her employer on more than one occasion of the conditions under which she was required to work, and that her employer promised to correct them. In such circumstances, even if she had the necessary knowledge, understanding and appreciation of the risk, she did not assume the risk during a reasonable period of time thereafter necessary for the employer to remedy the conditions. In *Hoffman v. Broadway Hazelwood,* 139 Or 519, 526, 10 P2d 349, 11 P2d 814, 83 ALR 1008, we said:

"* * * While the evidence discloses that plaintiff understood and appreciated the risks of her employment, there is also some testimony tending to show an implied promise on the part of the defendant to provide a garbage can which did not leak and to remedy the alleged dangerous condition of the passage-way. If, in fact, the plaintiff complained to the defendant of the alleged dangerous condition of the floor and was induced to continue work by reason of a promise, either express or implied, to remedy such condition, she would be ab-

solved from assuming the risk during a reasonable length of time for the performance of the promise.''

Although in making their complaints about the existing conditions, no express mention or claim was made that such conditions were unsafe or dangerous, yet plaintiff and her coemployes were concerned about and did complain of the various conditions which, as subsequent events demonstrated, a jury found rendered their place of work unsafe as a matter of fact.

The trial court submitted the defense of assumption of risk as a question of fact for the jury to determine. That is all to which defendant was entitled. The jury determined the matter adversely to defendant's contention.

■ The trial court also submitted to the jury as a question of fact the alleged contributory negligence of the plaintiff. We note that in its memorandum opinion allowing defendant's motion for judgment in its favor, the trial court did not mention the defense of contributory negligence, so we assume that it was of the opinion that that question was one of fact rather than of law. It is also our opinion that the question of contributory negligence was correctly submitted to the jury as a question of fact for its determination.

From what has been said, it follows that the trial court erred in allowing defendant's motion for judgment notwithstanding the verdict. There is substantial evidence in the record to support the verdict and judgment rendered thereon.

There remains for our consideration the cross-appeal of defendant from the order of the trial court denying its motion for a new trial.

The motion for a new trial is based upon alleged error on the part of the trial court in not taking from the jury's consideration, at defendant's request, the

several specific allegations of negligence hereinabove set forth; also, upon the admission of certain evidence shortly to be noted. As indicated above, we are of the opinion that the several specifications of negligence were properly submitted to the jury, as conditions which singly or in combination may have rendered the place an unsafe place in which to work.

The defendant contends that the trial court erred in admitting in evidence certain testimony and photographs concerning the "will call" facilities of two other department stores in Portland. The evidence tended to prove that a separate room was provided for the storage of packages at the "will call" department operated by Meier & Frank Co., in Portland, and that racks were used for storage purposes at Sears, Roebuck & Co., also in Portland.

The cases are numerous in which the conduct and practices of persons toward a material object have been used evidentially to prove a tendency or quality of the material object. The probative value of such evidence was clearly analyzed and enunciated by Mr. Justice ROSSMAN in *Silver Falls Co. v. E. & W. Lbr. Co.*, 149 Or 126, 177, 40 P2d 703. That was an action for damages to a logging company's property, caused by a fire started by negligent operations of another logging company amidst a dry surrounding area at a time of low humidity and strong winds. Evidence that a certain segment of logging operators in Oregon observed the practice of ceasing operations during such adverse weather conditions was held admissible as bearing upon the issue of lack of care of the defendant in conducting operations when the fire occurred. Respecting evidence of this character, we said:

"* * * This evidence, according to Wigmore, does not establish the standard of conduct as an

item of substantive law, but is merely an item of proof indicating 'the tendency of the thing in question'. The tendency of the thing now in question is the likelihood, or its absence, of fire arising when logging operations are conducted in periods of drouth. * * *.

"* * * We do not believe that the evidence in support of the practice must prove an industrial course of conduct of the age or universality of a custom."

In 2 Wigmore, Evidence 3d ed, 488, § 461, it is stated:

"1. This tendency of the material object is usually not shown (as in preceding classes of cases) by its involuntary effects upon senses or muscles—as where a person senses vision in sighting an object or feels pain upon eating a substance—but by its indirect effects, i.e., usually, by *voluntary conduct,* exhibited in *avoiding* or *conforming to the supposed tendency of the object.*"

Nor is it necessary that the practice be one which is generally prevalent in a business. In the discussion of proof of a tendency, capacity, quality, etc., appearing in 2 Wigmore, Evidence 3d ed, 438, § 447, it is said:

"It follows from what has just been said, that the number of instances offered is immaterial, so far as the logical principal [sic] is concerned. The only difference will be as to the practical utility, for the case in hand, of the inference to be drawn * * *.

"* * * But usually, where the evidence is regarded by the Court as otherwise admissible, it is received without any criticism as to the number of instances."

However, it will be noted that in *Silver Falls Co. v. E. & W. Lbr. Co.,* supra, the testimony as to the practices of other logging operators obviously related to precautions taken in the interests of safety.

In *Brigham Young University v. Lillywhite,* 118 F2d 836, 137 ALR 598, an action for damages for personal injuries resulting from an explosion which occurred while the plaintiff was performing a chemical experiment as a part of her course of instruction, evidence was admitted to show the manner of supervision of similar experiments at two other schools. Regarding the admissibility of such evidence, the court said:

"It must be conceded that evidence of the conduct of others, under the same or similar circumstances, is incompetent to establish a standard of care because standard of care is fixed by the rule of substantive law of which the court is the sole judge. * * * The standard of care is measured by ordinary care or lack of ordinary care. Therefore, the difficulty attendant upon its admission of evidence arises in the consideration of its effect in establishing a standard of conduct as contradistinguished from its evidentiary value insofar as it is competent, together with all the other facts and circumstances submitted to the jury in the determination of the question of whether or not the conduct of the defendant in each particular case evidenced ordinary care, or lack of care.

"The question is: may the conduct of others, a plan, or system, employed by them, be considered as evidence tending to show as a fact or circumstance that the particular act or omission complained of was negligent in that an ordinary prudent person, under like or similar circumstances would have acted or not have acted in the same way? Viewed in this light, it is for the jury to accept or reject the conduct, plan or system of others in its discretion in the application of these facts to the standard of care enunciated by the court. Wigmore on Evidence, vol. 1, section 461.

"If the evidence is admitted and the jury is admonished, either at the time it is admitted or by proper instructions in connection with its admission, that it was admitted merely to show what precau-

tions were generally taken in such cases as bearing upon the degree of care enjoined upon the defendant by his relationship to the plaintiff, we think the evidence is admissible for this purpose. * * *.

"* * * * *

"* * * If the introduction of the testimony would result in a confusion of issues, or inject many new controversial points collateral to the issues, or if it would tend to generate surprise, or undue prejudice disproportionate to the usefulness of the evidence, it should not be admitted.

"It is generally conceded that the trial court in the exercise of its discretion is more competent to judge of the exigencies of the particular case. The discretion of the trial court, when exercised within normal limits should not be disturbed."

It is noteworthy that in the Brigham Young University case, as in our own Silver Falls Co. case, the challenged testimony was directed to precautions taken as safety measures. Both decisions must be considered in the light of that fact. So considered, they announce sound and well-established principles of law.

In the instant case, however, there is nothing whatever to suggest that Meier & Frank Co. provided a separate room for the storage of packages as a safety measure, nor that safety considerations entered into the use of racks by Sears, Roebuck & Co.

The sole issue in this case, as it touches upon the question of negligence on the part of defendant, is whether plaintiff was provided with a safe place in which to work. "Safety" is the dominant subject of inquiry. Testimony as to a general or customary practice of other similar department stores adopted and followed as a safety precaution would, under the authorities above noted, be admissible, but we are not prepared to say that isolated instances of such a prac-

tice would be competent evidence. *Robertson v. Coca Cola Bottling Co.*, 195 Or 668, 680, 247 P2d 217. However, it is manifest that testimony as to conditions existing in other stores which have no relation to safety devices or precautions would not be admissible. Such testimony can serve no purpose other than to confuse the jury.

We hold that the admission of the challenged evidence constituted prejudicial error.

The judgment is reversed and this cause remanded for a new trial.